IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 29, 2014

## JOSEPH HOWARD GREEN, JR. V. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2011C2562     Cheryl A. Blackburn, Judge**

_____

### No. M2014-00148-CCA-R3-PC - Filed December 22, 2014

_____

The petitioner, Joseph Howard Green, Jr., was originally charged with second degree murder, and he ultimately pled guilty to voluntary manslaughter, a Class C felony. He received a six-year sentence to be served consecutively to another sentence. In this appeal, the petitioner contends that: (1) his guilty plea was not knowingly and voluntarily made because he was mentally ill and unmedicated at the time of his plea and because he was not made aware of the consequences of the guilty plea; and (2) that trial counsel provided ineffective assistance of counsel. Upon review, we affirm the judgment denying relief of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROGER A. PAGE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Morgan E. Smith, Nashville, Tennessee, for the appellant, Joseph Howard Green, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Senior Counsel; Victor S. Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

This case arose out of an altercation between the petitioner and the victim during

which the petitioner stabbed and killed the victim. Prior to the guilty plea hearing, Drs. Kimberly Brown and Thomas Xavier interviewed the petitioner and concluded that he was competent to stand trial. They also recommended that the petitioner continue to receive and to comply with mental health services at the jail to maintain his competency. They further found that an insanity defense would be unsuccessful because the evidence did not suggest that the petitioner was experiencing a mental illness that left him unable to appreciate the nature or wrongfulness of his actions during the incident with the victim.

At the petitioner's guilty plea hearing, the State set forth the following facts as the underlying basis for the petitioner's guilty plea:

> If this case had gone to trial, the State's proof would be that on July the 8th of 2011, I think it would be undisputed, that [the petitioner] owed the victim in this case, Mr. Robert Burris (phonetic), some money. I think it would further be the proof that Mr. Burris wanted his money and had made some overtures toward [the petitioner] about getting his money. That was the situation when Mr. Burris rode by [the petitioner's] house on July the 8th of 2011 with his cousin, a Ms. Samelta Glen (phonetic), in her vehicle. She was driving. Mr. Burris told Ms. Glen to stop the vehicle when he saw [the petitioner]. And, of course, he knew [the petitioner] owed him money. So he jumped out and went over and confronted [the petitioner] about the money. That confrontation turned into a fight. At one point Mr. Burris walked away back to the vehicle and was fine at that point. But then there were some more words, and Mr. Burris left the vehicle and went back and engaged with [the petitioner] again. It was during that second time that [the petitioner] stabbed Mr. Burris with a knife, and that ultimately caused Mr. Burris to die. This was here on 4395 Summertime Drive. I think this occurred in front of the [petitioner]'s house.

The petitioner told the trial court that he signed a petition to enter a plea of guilty to the reduced charge of voluntary manslaughter and a six-year sentence. He was a Range II, multiple offender based upon his prior felony convictions. The petitioner was serving a six-year sentence for a probation violation at the time of the hearing, and he agreed that he understood he would serve his sentence for voluntary manslaughter consecutively to his six-year sentence. He asked the court if he would receive any pretrial jail credit for the voluntary manslaughter charge, and the court informed him that he would receive pretrial credit for the period of time from when he was arrested for second degree murder to the point when he was served with his probation violation.

The trial court informed the petitioner that he was charged with second degree murder.

2

The court explained the elements of second degree murder and told the petitioner that he faced a potential sentence of fifteen to twenty-five years. The court then defined the elements of voluntary manslaughter, explaining that the difference between the crimes was that a voluntary manslaughter killing resulted from a "heat of passion." The court explained that as a Range II offender, the petitioner faced a sentence of six to ten years' incarceration. The petitioner agreed that counsel had discussed the crime for which he was initially charged, the crime to which he was pleading guilty, and the respective ranges of punishment. The petitioner agreed that he had thoroughly discussed his case with counsel and that she had explained to him the petition to enter a plea of guilty. The petitioner also confirmed that he understood that the conviction for voluntary manslaughter would remain permanently on his record.

The petitioner stated that he had received his high school diploma and that he was able to read. The petitioner stated that he normally took medication but that he was not medicated at the time of the hearing. He recalled that he took Risperdal, Cogentin, and Zyloprim, but he could not remember the names of all of his medications. The petitioner typically took his medication in the evening, but he did not take it the evening prior to the guilty plea hearing because he fell asleep early and missed "pill call." The court asked if his lack of medication was affecting his understanding of the proceedings, and he responded, "Not really," and confirmed that he was aware that he was pleading guilty to voluntary manslaughter. The court again asked the petitioner if he was affected by his lack of medication, and he replied, "Somewhat." He explained that he did not believe that he should have been charged with a crime in this case. The court interrupted the petitioner to clarify that it was not asking whether he believed that he should not have been indicted but whether he understood the guilty plea proceedings. The petitioner again reiterated that he was "[s]omewhat" affected by not taking his medication, and he contended that the effect was his failure to understand why he was being charged with a crime. The court asked if the petitioner wanted to plead guilty and explained that by pleading guilty to voluntary manslaughter, the petitioner would be admitting that he intentionally and knowingly killed another person but that his will was "overborn" at the time of the killing.

After a conference between the petitioner and counsel, the trial court again defined the elements of voluntary manslaughter. In an attempt to clarify some of the petitioner's confusion, the prosecutor told the court that he believed that the petitioner was trying to communicate to the court that he felt like he acted in self-defense in killing the victim. The prosecutor conceded that the petitioner had "a decent argument about self-defense." As a result, the prosecutor offered the plea agreement, which was a compromise between the sentence the petitioner could receive at trial and a complete acquittal. The petitioner confirmed that he believed he acted in self-defense when he expressed confusion as to why he was charged with a crime, and he confirmed that he understood the plea agreement was

3

a compromise between a guilty verdict as to second degree murder and a complete acquittal. However, when asked a second time if he understood that the plea agreement was a compromise, the following exchange occurred between the court and the petitioner:

Petitioner: Somewhat. But I don't think -- I don't --

Trial Court: Well, I mean, if you don't want to plead guilty, that's fine. I'm just trying to find out that you are making this decision, this is your voluntary choice, and that you are making this after you've discussed this with everybody and you've chosen to do this but the fact that you haven't taken your medication is not affecting your decision. That's all I'm trying to find out so . . .

Petitioner: I understand

Trial Court: You do understand. So this is what you want to do then?

Petitioner: Ma'am?

Trial Court: Is this what you want to do? Is this your choice?

Petitioner: I'm saying it's my choice if my lawyer is not talking --

Trial Court: No, no, no, no. she can advise you, but you ultimately have to decide. Your trial is set in October. Do you want to take this compromise, or do you not? She can give you all kinds of advice about what, you know, your chances are or what the proof is and all that, but you ultimately have to make this decision. It has to be your decision based on thorough discussion and information. So are you choosing to plead guilty to voluntary manslaughter? Is this your choice?

Petitioner: Yes, ma'am.

Trial Court: Okay. And you've discussed it with her, and she's told you things. But ultimately are you making this decision?

Petitioner: Yes, ma'am.

The petitioner agreed that no one had threatened or coerced him into pleading guilty. He also agreed that he understood that he did not have to plead guilty and that he was giving up his

right to go to trial by pleading guilty. The following exchange then occurred between the petitioner and the court:

> Trial Court: Now, have you been satisfied with the work [trial counsel] has done on your case?
>
> Petitioner: I think I shouldn't have been indicted on homicide.
>
> Trial Court: Okay. Well, that's not her call. Do you understand that? That's -- the State decided to do that. That goes back to the fact of whether or not you want to plead guilty. You don't think that you should have been indicted because you think you have a self-defense. Well, you were. We're kind of not there. So do you want to do this?
>
> Petitioner: I guess so, yes.

The petitioner confirmed that he understood that he would have the right to an attorney at trial. He also agreed that he was aware that counsel would cross-examine witnesses against him at trial and that he had the right to testify but would not be required to do so. He confirmed that he was surrendering his right to a sentencing hearing and the right to appeal both the fact that he pled guilty and the length of his sentence. He agreed that he wanted to plead guilty. Counsel confirmed that she thoroughly discussed the case with the petitioner and that she believed that the petitioner understood the consequences of his guilty plea. The petitioner agreed that the State's recitation of the facts was an accurate recollection of the incident that led to the victim's death, and he responded affirmatively that he was pleading guilty to voluntary manslaughter.

The trial court accepted the petitioner's plea and stated, for the first time at the proceeding, that voluntary manslaughter was a felony. The court found that there was a factual basis to support the plea and sentenced the petitioner to a six-year sentence to be served consecutively to his current six-year sentence.

The petitioner timely filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel, and the petitioner later filed an amended petition. The post-conviction court conducted a hearing where both the petitioner and his mother testified.

At the post-conviction hearing, the petitioner testified that he was prescribed Depakote, Risperdal, Cogentin, Trazodone, and Haldol and that he had taken Depakote the night before the post-conviction hearing. The petitioner stated several times during the

hearing that he believed that he was the rapper Lil Wayne[1] and that he was married to the rapper Nicki Minaj. He stated that he wished trial counsel would have "[r]eally look[ed] into the case more." He told trial counsel about "law 46 on voluntary manslaughter[,]" a law that said, "[I]f you use a knife in a self-defense case, a murder, they can only charge you with assault and battery." The petitioner was aware that trial counsel attempted to negotiate a plea agreement with the State that called for two to three years' imprisonment. However, the State increased this proposed sentence to six years after discovering that he was a Range II offender.

The petitioner was unsure whether he took his medication the night before he entered his guilty plea. He stated that he did not want to plead guilty but did so because he was afraid that the jury might wrongly convict him based upon his manner of speech. At the time of his plea, the petitioner believed that he was pleading guilty to "[s]elf-defense. . . . a misdemeanor charge." The petitioner stated that there were two types of misdemeanors: either an "11/29 probation misdemeanor" or a misdemeanor that imposed a sentence of three to six years. He believed that felony convictions began with sentences that were at least seven years in length. When asked how he misunderstood that he was pleading guilty to a felony charge after the trial court explained that he was pleading guilty to a felony, the petitioner replied that he "didn't misunderstand it." He understood voluntary manslaughter to be a misdemeanor because he was originally indicted for second degree murder, and the charge was later reduced. Because the charge was reduced, he believed that he would be pleading guilty "to a misdemeanor or a lower charge." He stated that trial counsel's "exact words" were that "by [the petitioner] copping out to this plea that [he] will be copping out to a misdemeanor charge."

On cross-examination, the petitioner agreed that he knew that he pled guilty to a six-year sentence. The prosecutor asked if the petitioner knew that he pled guilty to the crime of manslaughter, and the petitioner responded, "Right. Voluntary manslaughter." The petitioner agreed that he knew the crime to which he was pleading guilty and the sentence he would receive, regardless of whether the crime was classified as a felony or a misdemeanor. The petitioner also stated that trial counsel told him that he "could appeal it within a year." He agreed that he made the decision to plead guilty instead of proceeding to trial, albeit "uncomfortably." The petitioner was uncomfortable with his plea because he would have preferred a lesser sentence, but he agreed that he still made the decision to plead guilty.

---

[1] While these statements certainly raise a question about the petitioner's current competency, the question of his competency at the post-conviction hearing is not before us, and we do not have a record sufficient to allow us to consider it.

6

Jewel Hill, the petitioner's mother, testified that she believed that "everything that was happening to him was [her] fault from birth." She stated that the petitioner was not "right[,]" as he "kept saying he was God, and he was making his kids feel sad." She said that the petitioner went to a mental health clinic, but she later found out that he was not taking his prescribed medications. Ms. Hill testified that the petitioner lost his job after telling co-workers that he was God, that he got them their jobs, that he was the manager, that he was the President, and that the President was his father. She stated that she took the petitioner to the hospital the week of the incident with the victim. Ms. Hill noted that the petitioner "was easily persuaded when he's not taking his medicine."

After the hearing, the post-conviction court denied relief in a written order. The court found that both the testimony of the petitioner and his mother confirmed that the petitioner had mental health issues. The court noted that although the petitioner "made some confusing and illogical statements" during his testimony, he reiterated multiple times that he understood that he was pleading guilty to voluntary manslaughter in exchange for a six-year sentence. The court noted that the petitioner was mistaken about his belief that voluntary manslaughter was a misdemeanor but chose to plead guilty because he was concerned that he would be convicted at trial. The court found that the petitioner did not present any evidence that trial counsel was ineffective or that any deficiency by trial counsel prejudiced the petitioner, and the court denied his ineffective assistance of counsel claims.

The court found that the petitioner's testimony at the post-conviction hearing contradicted his claim that his guilty plea was not knowing or voluntary due to mental illness. The court found that the petitioner was confused about the classification of misdemeanors and felonies but noted that he stated several times that he understood that he was pleading guilty to the lesser-included offense of voluntary manslaughter for a sentence of six years. The court noted that the petitioner did not believe that he was guilty of a crime but that he agreed to plead guilty to avoid receiving a longer sentence as a result of a guilty verdict at trial.

The court also found that the transcript of the guilty plea hearing supported a finding that the petitioner's plea was knowing and voluntary. The court noted that the petitioner "was more lucid during his plea hearing [than at the post-conviction hearing.]" The court found that the petitioner was engaged in the plea colloquy and provided appropriate responses that were not merely "Yes" or "No" answers. The petitioner asked about receiving pretrial jail credit based upon the sentence he was currently serving and asked a question about how his prior conviction would affect the manner of his sentences. The court noted that the petitioner successfully recalled the medications that he was taking and was able to tell the court when he took his medication. The court observed that the petitioner was able to discuss that his medication did not affect his decision making but that he did not

understand the reason he was charged with second degree murder, as the petitioner believed that the crime was justified. The court found that the record of the guilty plea hearing indicated that the petitioner understood the consequences of his guilty plea and as a result that his plea was knowingly and voluntarily entered.

After the trial court denied his petition, the petitioner timely filed his notice of appeal. We now proceed to consider his claims.

## ANALYSIS

### I. Knowing and Voluntary Guilty Plea

The petitioner argues that his guilty plea was not knowing and voluntary. Specifically, he contends that his unmedicated mental illness made him incapable of knowingly and voluntarily pleading guilty, and his plea was not knowing and voluntary because he was not made aware of the consequences of the plea.

To obtain post-conviction relief, the petitioner must demonstrate that "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A plea is involuntary "if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43). In evaluating whether a guilty plea was knowingly and voluntarily entered, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A reviewing court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence of
> the defendant; the degree of his familiarity with criminal proceedings; whether

he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

### A. Mental Illness

The petitioner contends that his guilty plea was invalid because he suffers from a mental illness and had not taken his medication at the time he entered his guilty plea. The post-conviction court found that the petitioner's testimony at the post-conviction hearing contradicted his claim that his plea was not knowing and voluntary. Although he was confused about the classification of misdemeanors and felonies, he repeatedly confirmed that he knew that he was pleading guilty to the charge of voluntary manslaughter in exchange for a six-year sentence. He also articulated the reason that he wished to avoid a trial, where he faced a twenty-five-year sentence if convicted. He testified that he was uncomfortable pleading guilty due to his desire for a shorter sentence, but he agreed that he overcame this discomfort and made the decision to plead guilty. Further, as the post-conviction court observed, the transcript of the petitioner's guilty plea also demonstrated that his plea was knowing and voluntary. During the plea colloquy, he was engaged with the trial court, asking questions of the trial court about pre-trial jail credit and appropriately answering the trial court's questions. The record reflects that the petitioner's confusion at the proceeding seemed to stem not from a failure to understand his guilty plea due to his lack of medication but rather from his belief that he should not have ever been indicted. However, as the trial court explained, the petitioner's belief that he should not have been charged was not relevant to the proceedings; the only relevant inquiry was whether the petitioner wished to enter a plea of guilty. After the trial court provided this explanation, the petitioner stated that he wished to plead guilty.

Further, the only medical evidence introduced at the post-conviction hearing regarding the petitioner's mental health condition was Dr. Brown's recommendation that the petitioner "continue to receive and be compliant with mental health services in jail to maintain competency." Although this recommendation, along with the testimony of the petitioner and his mother, reflects that the petitioner suffers from a mental illness, the petitioner presented no medical testimony regarding the effect that a failure to take his medications would have on him. "[T]his Court has, on multiple occasions, held that a petitioner's bare allegations, unsupported by medical testimony, about the use of psychiatric drugs was insufficient to support a claim that his plea was not knowingly and voluntarily entered." *Darrell Wayne*

9

*Bumpas v. State*, No. M2010-00222-CCA-R3-PC, 2010 WL 5140673, at *8 (Tenn. Crim. App. Dec. 14, 2010) (citations omitted). In denying post-conviction relief, the post-conviction court implicitly found that the petitioner did not establish by clear and convincing evidence that a failure to take his medication affected his ability to enter a knowing and voluntary plea, and the evidence does not preponderate against this finding. Accordingly, we conclude that the petitioner has not met his burden of proving that his guilty plea was not knowing and voluntary.

## B. Consequences of the Plea

The petitioner also contends that his plea was not knowing and voluntary because he was not aware that voluntary manslaughter was a felony. In order for a guilty plea to be voluntary, a defendant must be made aware of the consequences of the guilty plea. *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In addition to the requirements of *Boykin* that a defendant be informed that a guilty plea waives the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers, Tennessee Rule of Criminal Procedure 11(b)(1) provides additional information about which a trial court must question the defendant, including whether the defendant understands "the nature of the charge to which the plea is offered[.]" Tenn. R. Crim. P. 11(b)(1)(A); *Howell v. State*, 185 S.W.3d 319, 331 (Tenn. 2006). However, only substantial, rather than literal, compliance with the advice in Tennessee Rule of Criminal Procedure 11(b)(1) is required. *Howell*, 185 S.W.3d at 331. "A trial court substantially complies with these mandates when it expresses the sense of the substance of the required advice to a defendant who is seeking to plead guilty." *Id.*

Here, the petitioner correctly points out that the trial court did not affirmatively state that voluntary manslaughter was a Class C felony until after the petitioner entered his guilty plea. However, the trial court explained the elements that constituted the offense of voluntary manslaughter, the sentence that the petitioner would receive as a result of his guilty plea, and the fact that the conviction would remain permanently on his record, which is one of the consequences of pleading guilty to a felony. The petitioner did not respond to the trial court's statement that he was pleading guilty to a felony by expressing surprise or communicating his understanding that the crime was a misdemeanor. Furthermore, the petition to enter a plea of guilty stated that voluntary manslaughter was a Class C felony, and the petitioner's signature was on this document. *See Linda Blair v. State*, No. W2010-00627-CCA-R3-PC, 2010 WL 4812768, at *4 (Tenn. Crim. App. Nov. 18, 2010) (concluding that the petitioner's signature on a judgment sheet that indicated that TennCare fraud was a Class E felony could be considered as proof that the petitioner was aware that the consequence of her guilty plea would be a felony conviction). The petitioner, who had prior felony convictions, was familiar with the criminal justice system. By denying the petition, the post-

10

conviction court implicitly chose not to credit the testimony of the petitioner that he believed that voluntary manslaughter was a misdemeanor. We conclude that the record does not preponderate against the post-conviction court's finding that the petitioner was aware of the consequences of his guilty plea. Accordingly, the petitioner is not entitled to any relief as to this claim.

## II. Ineffective Assistance of Counsel

The petitioner argues that trial counsel provided ineffective assistance of counsel. Specifically, he contends that counsel was ineffective for failing to investigate the petitioner's competency at the time of his guilty plea, failing to properly articulate to the petitioner that voluntary manslaughter was a felony, and for informing the petitioner that he had one year to file an appeal.

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

11

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to establish prejudice in the context of a guilty plea, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This requires a showing of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216 (citing *Goad*, 938 S.W.2d at 370).

The post-conviction court found that the petitioner did not present any evidence that trial counsel was ineffective or that he was prejudiced by any alleged deficiency. The petitioner was deemed competent to stand trial and, as we concluded above, entered a knowing and voluntary guilty plea. Although the petitioner claimed at the post-conviction hearing that trial counsel informed him that voluntary manslaughter was a misdemeanor, he confirmed several times that he knew that he was pleading guilty to the charge of voluntary manslaughter in exchange for a six-year sentence. He also agreed that he pled guilty because he was concerned that he would be convicted at trial. He stated at the guilty plea hearing that he understood that he was waiving his right to appeal by pleading guilty. We note that trial counsel did not testify at the post-conviction hearing, and this court has "observed on many occasions that original counsel, when available, should always testify in a post-conviction proceeding when there is an allegation that [she] was ineffective." *State v. Hopson*, 589 S.W.2d 952, 954 (Tenn. Crim. App. 1979). However, even if we were to assume that trial counsel's performance was in some way deficient, we conclude that the petitioner has not met his burden of proving that but for trial counsel's errors, he would not have pled guilty and instead proceeded to trial. The petitioner is not entitled to any relief as to this claim.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____

JOHN EVERETT WILLIAMS, JUDGE

12